## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | |
|---|---|
| **AVENU INSIGHTS & ANALYTICS, LLC,** | |
| **Plaintiff,** | **Case No. 2:24-cv-04044** |
| **vs.** | **JURY TRIAL REQUESTED** |
| **BRUCE MCDANIEL,** | |
| **Defendant.** | |

### PLAINTIFF AVENU INSIGHTS & ANALYTICS, LLC'S COMPLAINT

COMES NOW Plaintiff Avenu Insights & Analytics, LLC ("Avenu" or "the Company"), by and through its counsel, Littler Mendelson, P.C., and for its cause of action against Defendant Bruce McDaniel ("McDaniel" or "Defendant"), alleges and states as follows:

### I.     INTRODUCTION

1.      This Complaint is filed to recover damages and prevent immediate and irreparable harm to Avenu resulting from McDaniel's violations of the terms of the Confidentiality, Non-Solicit, and Non-Compete Agreement ("Agreement") he entered into with Avenu, effective October 1, 2018 (*i.e.*, to abstain from unlawfully competing post-employment, from using and/or disclosing Avenu's confidential information, and from soliciting Avenu's employees and customers).  A copy of the Agreement is attached to this Complaint as **Exhibit A** and incorporated herein.

2.      Indeed, McDaniel's willful disregard for his post-employment obligations to Avenu is best demonstrated by the fact he accepted a job with one of Avenu's direct competitors, Catalis, in a role where he provides services for the benefit of Catalis that are the same or similar in function

or purpose to those he provided to Avenu, in the same geographic area in which he worked for Avenu. Accordingly, this suit seeks redress for McDaniel's breach of (1) his contractual obligation to refrain from unlawfully working for a direct competitor, (2) his contractual obligation to refrain from unlawfully soliciting Avenu's employees, (3) his contractual obligation to refrain from unlawfully soliciting Avenu's customers, and (4) his contractual obligation not to use or disclose Avenu's confidential information.

## II.    THE PARTIES

3.      Avenu is a foreign limited liability company organized under the laws of Delaware. Avenu is a citizen of New York, Virginia, California, Alabama, New Jersey, and Maryland— where its members maintain their citizenship. Avenu operates its business throughout the United States of America, including, but not limited to within the State of Missouri and the Holts Summit, Missouri area.

4.      McDaniel is a former employee of Avenu and a citizen of the State of Missouri, who resides in Holts Summit, Missouri. While employed by Avenu, McDaniel worked fully remotely from his residence in Holts Summit, Missouri.

## III.   JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because Avenu and McDaniel are citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.      The Court has personal jurisdiction over McDaniel because he is a resident of the State of Missouri, and because he has transacted business in the State of Missouri. The Court has personal jurisdiction over Avenu because it maintains a registered agent within the State of

2

Missouri, hires and maintains employees to work in the State of Missouri, services customers located in the State, and conducts business in the State.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and L.R. 3.2(a)(2) and 3.2(b)(1) because a substantial part of the events or omissions giving rise to these claims occurred in this judicial district and because at the time the causes of action alleged herein accrued, McDaniel was a natural person residing in and working remotely from Holts Summit, Callaway County, Missouri.

## IV.     FACTUAL BACKGROUND

### A.     Avenu's Business & McDaniel's Employment

8.      As relevant to this lawsuit, Avenu maintains a business unit denominated as "Justice Solutions Products." Within the Justice Solutions Products business unit are two primary product offerings: "Avenu | Court" and "Avenu | Jury" (collectively, the "Company's Business" or "Business").

9.      Avenu | Court is a comprehensive software solution for various court types, which is intended to streamline court operations and reduce expenses. Avenu | Court is utilized by over 1,000 courts throughout the United States. Avenu | Court has a number of features and benefits, such as: streamlined case filing (comprehensive case management begins at the time of the electronic or manual filing); better organization (view calendars, check for conflicts, and then generate hearing notices that maximize daily operations); limitless document processing (files generated within Avenu | Court are automatically associated with the appropriate case(s)); flexible adjudication (efficient case dispositions for judgements, sentences, and processing orders); secure payment processing (a central user interface resolves fees, including traffic violations, court fines, and bonds); complete lifecycle tracking (case management that does not end with adjudication.

Avenu | Court ensures compliance with court orders and conditions); expanded solutions (provide constituents with modern features, such as in-court processing, archiving, expungements, and supervision); etc.

10.    Avenu | Jury is a functionally comprehensive and technologically advanced jury management solution, which simplifies jury management, minimize paperwork, reduce expenses, and enhance the user experience. Avenu | Jury features and benefits include, among others:  pool creation & qualification (populate jury pools swiftly and securely with Avenu's cryptographically secure pseudorandom generator; jury selection (create master jury lists from a variety of sources including the DMV, voter registration records, etc.); accounting software (automatically calculate all juror payments and expenses by configuring rules specific to your jurisdiction); case & panel creation (streamline your workflow with simplified case creation, randomized panel selection, and mobile functionality); jury management (Avenu's self-service kiosks allow jurors to check in, enter information, produce payments, and print proof of attendance); automated reporting (choose from over 60 baseline reporting formats from our dashboard, or develop custom reports).

11.    Avenu has many long-standing relationships with numerous Justice Solutions Products customers and has expended substantial time, money, and effort in developing and maintaining such relationships.  It is common for Avenu's customers to endure over a number of years, and Avenu depends heavily on repeat and renewal business from its existing customer base in order to sustain its profitability.  Stated simply, new customers are extremely difficult to acquire and if properly served, are typically very loyal to an established provider such as Avenu.

12.    McDaniel began working for a company named Conduent Incorporated ("Conduent") around 1997.  Avenu acquired Conduent in late September 2018.  As a result of the Conduent acquisition, McDaniel began his employment with Avenu in or around October 2018.

McDaniel entered into a Confidentiality, Non-Solicit, and Non-Compete Agreement ("**Agreement**") with Avenu, effective October 1, 2018. *See* Exhibit A.

13. During his last two (2) years of employment with Avenu, McDaniel worked in two different positions, *i.e.*, as a Business Analyst and then subsequently as a Product Manager. Both of these positions were within the Company's Justice Solutions Products business unit. As a Business Analyst, McDaniel served as a liaison between Avenu's Justice Solutions Products customers and Avenu's product developers, *i.e.*, in order to maintain and update, as well as identify and resolve issues with, the Avenu software solutions utilized by the customer. Thus, McDaniel had regular contact and interaction with Avenu's customers, and thereby gained extensive confidential business knowledge regarding those customers and their business needs/activities/preferences/tendencies related to Justice Solutions Products. McDaniel likewise developed significant goodwill with Avenu's customers through his employment activities. Avenu's Business Analysts within the Justice Solutions Products business unit, such as McDaniel, do not have assigned geographic territories and typically perform services for Avenu's customers throughout the United States.

14. In his final role with the Company, which he assumed in 2022, McDaniel became a Product Manager. As a Product Manager, McDaniel was still required to regularly maintain and update, as well as identify and resolve customer issues with, the Company's legacy Avenu | Court and Avenu | Jury software systems for customers throughout the United States. However, McDaniel also assumed additional duties related to the development of new software systems for Avenu | Court and Avenu | Jury, which were intended to enhance and define the future of Avenu's Business over at least the next few years. McDaniel developed the functionality and features of these new software products, tailored those products to fit customer needs, and evaluated Avenu's

software product offerings against those of the Company's competitors. Moreover, McDaniel was tasked to be the leader of the group that was responsible for creating the Company's next generation jury management software application. The new software systems developed by McDaniel were intended to be sold to customers across the United States and internationally.

15.     Commensurate with his Business Analyst and Product Manager positions with Avenu, and as an absolute prerequisite to his ability to adequately perform his duties as a Business Analyst and/or Product Manager, Avenu provided McDaniel with (and McDaniel had regular access to and routinely reviewed and/or utilized) a substantial amount of Avenu's confidential information pertaining to its business, its customers, its employees and its software products throughout his employment with the Company.

16.     The type of Avenu confidential information provided to McDaniel relating to its legacy and future software systems, and/or the maintenance, repair, sale and/or development of its software systems includes, but is not limited to, internal project structure, algorithms, source code, financial data, marketing plans, customer lists, product roadmaps, development strategies, formulas, data, inventions, techniques, strategies, forecasts, trade secrets, etc.  In addition, the confidential information may include information concerning any of Avenu's past, current, or possible future software products or methods, such as information about research, development, engineering, purchasing, manufacturing, accounting, marketing, selling, leasing, etc.

17.     The type of Avenu confidential business and customer information provided to McDaniel included, but is not limited to, various types of data, such as: the client's name, address, contact details; client financial information and other financial information concerning Avenu's products, business and/or customers; business information, *e.g.*, trade secrets, intellectual property, business plans and strategies, client lists, marketing strategies, research and development, and

other proprietary information that provides the company with a competitive advantage; customer communications; manuals; financial statements; supplier lists; pricing information; development processes; operations manuals; contracts; other technical and product information; etc. McDaniel was also routinely provided access to Avenu's customers, in order to leverage and/or build upon the existing goodwill and/or create new goodwill between Avenu and its customers.

18. Additionally, McDaniel was provided with confidential employee information and records, such as information about employee roles, responsibilities, salaries, personal identification, performance reviews, etc.

19. The type of confidential information shared with McDaniel during his employment, as summarized above, would be greatly beneficial to competitors in soliciting Avenu's customers, soliciting Avenu's employees, as well as in creating competing software system products. McDaniel would not have had access to any of Avenu's confidential information and customer relationships were it not for his employment with Avenu.

20. Indeed, McDaniel's access to Avenu's confidential information positions him well to unlawfully subvert Avenu's business interests, develop competing software systems, and engage in other acts of unfair competition. If McDaniel is permitted to use Avenu's confidential information to compete against Avenu in this manner, to the benefit of himself and Catalis and/or to Avenu's detriment, Avenu will be irreparably harmed.

21. Avenu's confidential information is of such a special, unique, extraordinary, and/or intellectual character that it has an enormous value to the Company. Accordingly, McDaniel's acceptance of employment with Catalis, a direct competitor, places Catalis in an advantageous position to unlawfully reap the benefits of the proprietary knowledge that Avenu entrusted to McDaniel regarding its customers, employees, and its current and future products. Thus,

McDaniel's violation of his Agreement has resulted and will continue to result in irreparable harm to Avenu.

22.     McDaniel remained employed by Avenu until his voluntary resignation on or about July 21, 2023.  At the time of his termination, he was a resident of Missouri.  At some point thereafter, McDaniel became employed with Catalis, which is a direct competitor of Avenu.[1]

23.     Merely seven (7) days after McDaniel's departure, two other Avenu employees with whom McDaniel had worked and/or routinely communicated—Jerry Midge King ("King") and Jonathan Jewett ("Jewett") (who are married)—voluntarily ended their employment with Avenu on July 28, 2023, and began working for Catalis.  Based upon the close temporal proximity of these resignation dates, coupled with the fact that McDaniel was well acquainted and/or had worked with King and Jewett, and upon information and belief, it is self-evident that McDaniel violated his Agreement by unlawfully soliciting King and Jewett to terminate their employment relationship with Avenu, in order to begin a new employment relationship with Catalis.

24.     At the time of McDaniel's resignation, and immediately prior to King's resignation, an Avenu client (who shall not be identified in this public filing for privacy and confidentiality reasons) notified Avenu that it would be canceling its business relationship with Avenu, in order to begin a relationship with Catalis.  Notably, both McDaniel and King had previously worked with this client at Avenu.  Based upon the close temporal proximity of these resignations and the departure of this client, coupled with the fact that McDaniel and King had both worked with this client at Avenu, and upon information and belief, it is self-evident that McDaniel violated his

_____

[1] *See*, https://catalisgov.com/courts-land-records/.   Court Case Management:  "From initiation to disposition, agencies can unify the case management process by employing a multifaceted court case management system. Using our pioneering court management solution, you can organize and modify case information in real-time, simplifying proceeding communications."  Jury Management: "Every step of the juror selection process should be seamless and cohesive for your citizens. With our industry-leading Jury Management solution, you can engage jurors digitally, delivering a collaborative and easy experience."

Agreement by unlawfully soliciting this client to terminate its business relationship with Avenu, in order to begin a new relationship with Catalis.

**B.**      <u>**Avenu Takes Reasonable Steps to Protect its Confidential Information and Customer Goodwill**</u>

25.      Avenu expended considerable resources to (a) identify and solicit potential customers, (b) maintain and deepen its relationship with existing customers, (c) market its own brand and foster customer goodwill, (d) develop competitive, yet profitable, pricing strategies and models, (e) maintain and develop cutting edge software products related to court management and jury management systems, and (f) train, motivate, and develop its employees. Individuals employed by Avenu who are engaged as a Product Manager and/or Business Analyst—as was McDaniel—become inexorably and intimately knowledgeable about Avenu's employee's, Avenu's customers and their transactional data, and Avenu's Business. The aforementioned information is valuable, confidential, and proprietary to Avenu, and is not generally known in the public domain. The information has significant economic value to Avenu, and would be of significant economic value to competitors in the industry.

26.      To protect its legitimate business interests with respect to the aforementioned confidential information and the investment Avenu makes in its employees, customers and business, Avenu limits access to its confidential information in a variety of ways. More specifically, Avenu: (a) utilizes password protections to safeguard its computer systems and data; (b) marks certain sensitive and trade secret documents as "confidential;" (c) requires individuals employed in sensitive positions, such as McDaniel, to sign restrictive covenants and non-disclosure agreements as a condition of employment, as set forth in the Agreement; and (d) limits access to certain information based on a need to know basis, among other safeguards.

**C.**      <u>**McDaniel's Agreement**</u>

27. On or about October 1, 2018, in consideration for his employment with Avenu, compensation and benefits, access to the Company's confidential information, trade secrets, and access to the Company's business contacts, as well as specialized training, McDaniel executed the Agreement, which contains pertinent non-compete, non-solicit, and non-disclosure provisions. (*See* Ex. A).

28. In the Agreement, McDaniel agreed that access to or receipt of the foregoing would "give me an unfair competitive advantage if *my* activities during employment, and for a reasonable period thereafter, were not restricted as provided for in this Agreement." (*Id.*, § 1).

29. As part of the Agreement, McDaniel agreed that:

> In order to protect the Company's Confidential Information (including trade secrets), goodwill, and key business relationships, I agree that for a period of one (1) year after my employment ends (irrespective of which party ends the relationship or why it ends), I will not (directly, indirectly and/or through the direction or control of others) […] provide services for the benefit of a Competing Business within the Territory (term defined below) that are the same or similar in function or purpose to those I provided to the Company during the Look Back Period (term defined below).

(*Id.*, § 3(e)).

30. The Agreement defines the term "Competing Business" as follows:

> [A]ny person or entity that engages in (or is planning to engage in) a business that competes with a portion of the Company's Business, which I had involvement with or access to Confidential Information about, during the last two years of my employment with the Company (or such shorter period of time as I am employed) . . . .

(*Id.*, § 3).

31. The Agreement defines the term "Confidential Information" as follows:

> [A]n item of information or compilation of information in any form (tangible or intangible) related to the Company's Business that I acquire or gain access to during my employment that the Company has not authorized public disclosure of, and that is not readily available to the public or persons outside the Company. By way of example and not limitation, Confidential Information is understood to include: lists

and records, contact information, private contract terms, business preferences, and historical transaction data regarding existing and prospective customers; non-public records and data regarding the Company's financial performance; business plans and strategies, forecasts and analyses; internal business methods and systems, know how, and innovations; marketing plans, research and analysis; unpublished pricing information, and variables such as costs, discounting options, and profit margins; business sale and acquisition opportunities identified by the Company and related analysis; records of private dealings with vendors, suppliers, and distributors; and Company trade secrets.

(*Id.*, § 2).

32. The Agreement defines the term "Territory" as follows:

[T]he geographic territory(ies) assigned to me by Company during the Look Back Period (by state, county, or other recognized geographic boundary used in the Company's business); and, if I have no such specifically assigned geographic territory then: (i) those states and counties in which I participated in the Company's business and/or about which I was provided access to Confidential Information during the Look Back Period; and, (ii) the state and county where I reside and the states and counties contiguous thereto.

(*Id.*, § 3).

33. The Agreement defines the term "Look Back Period" as "the last two years of *my* employment with the Company (or such shorter period of time as I am employed)." (*Id.*, § 3).

34. Regarding solicitation of Avenu's customers, McDaniel agreed:

In order to protect the Company's Confidential Information (including trade secrets), goodwill, and key business relationships, I agree that for a period of one (1) year after my employment ends (irrespective of which party ends the relationship or why it ends), I will not (directly, indirectly and/or through the direction or control of others) […] solicit, or attempt to solicit a Covered Customer or Key Relationship (terms defined below), for the purpose of doing any business that would compete with the Company's Business.

(*Id.*, § 3(c)).

35. The Agreement defines the term "Covered Customer" as "a customer that I had material, business-related contact or dealings with, or access to Confidential Information about, during the Look Back Period." (*Id.*, § 3).

36.     The Agreement defines the term "Key Relationship" as "a person or entity with an ongoing business relationship with the Company (including vendors, agents, and contractors) who I had material business-related contact or dealings with, during the Look Back Period." (*Id.*, § 3).

37.     Regarding solicitation of Avenu's employee's, McDaniel agreed:

> In order to protect the Company's Confidential Information (including trade secrets), goodwill, and key business relationships, I agree that for a period of one (1) year after my employment ends (irrespective of which party ends the relationship or why it ends), I will not (directly, indirectly and/or through the direction or control of others) […] solicit any employee of Company that I gained knowledge of through my employment with Employer (a "Covered Employee") to leave the employment of the Company.

(*Id.*, § 3(a)).

38.     McDaniel further agreed not to disclose Avenu's Confidential Information. Specifically, McDaniel agreed that:

> I agree to use Company's Confidential Information only in the performance of my duties, to hold such information in confidence and trust, and not to engage in any unauthorized use or disclosure of such information during my employment and for so long thereafter as such information qualifies as Confidential Information.

> In order to protect the Company's Confidential Information (including trade secrets), goodwill, and key business relationships, I agree that for a period of one (1) year after my employment ends (irrespective of which party ends the relationship or why it ends), I will not (directly, indirectly and/or through the direction or control of others) […] take on any other responsibilities for a Competing Business that would involve the probable use or disclosure of Confidential Information or the conversion of Covered Customers or *Key* Relationships to the benefit of a Competing Business or detriment of the Company.

(*Id.*, §§ 2, 3(f)).

39.     McDaniel made the following acknowledgment regarding Avenu's Confidential Information:

> I acknowledge that items of Confidential Information are the Company's valuable assets and have economic value because they are not generally known by the public or others who could use them to their own economic benefit and/or to the competitive disadvantage of the Company. I agree that all records, in any form

(such as email, database, correspondence, notes, files, contact lists, drawings, specifications, spreadsheets, manuals, and calendars) that contain Confidential Information or otherwise relate to the Company's Business, with the exception of wage and benefit related materials provided to me as an employee for my own use as an employee, are the property of the Company (collectively "Company Records"). I will follow all Company policies regarding use or storage of Company Records. I also agree to promptly return all Company Records (including all copies) when my employment with Company ends or sooner if requested.

(*Id*., § 2).

40.     Avenu and McDaniel agreed that if McDaniel breached the Agreement, "the Company will suffer irreparable harm, in addition to any damages that can be quantified . . . . Accordingly, in the event of such a breach or a threatened breach, the Company will be entitled to all remedies that may be awarded by a Court of competent jurisdiction, recovery of its attorney's fees and expenses (including, but not limited to costs of court, expert fees, travel expenses, and other expenses incurred), and any other legal or equitable relief allowed by law." (*Id*., § 4).

41.     The Agreement provides that if McDaniel "fails to comply with a timed restriction in this Agreement, the time period for that restriction will be extended by one (1) day for each day Employee is found to have violated the restriction, up to a maximum of twelve (12) months." (*Id*., § 8).

42.     In exchange for his promises in the Agreement, McDaniel received, among other things, wages, benefits, and training from Avenu in connection with his employment, and gained access to and possession of Avenu's confidential information and trade secrets.

43.     After Avenu learned of his employment with Catalis, Avenu forwarded McDaniel a letter in which it requested his full compliance with the terms of the Agreement, including but not limited to the non-compete, non-solicit, and non-disclosure covenants, and that he cease and desist from all unlawful actions in violation thereof.

44.     McDaniel responded to Avenu's cease and desist letter through his attorney. Notably, in his reply, McDaniel's attorney did not deny the allegation in Avenu's letter that McDaniel was performing services for Catalis, which were the same as or similar in function or purpose to those he provided to Avenu during his employment. Nor did McDaniel's attorney deny Avenu's averments that (i) McDaniel was competing with Avenu or (ii) McDaniel had engaged in unlawful acts of solicitation.

45.     Despite Avenu's demand to McDaniel that he immediately cease and desist of all wrongful conduct described herein, McDaniel continues to work as an employee of Catalis, a direct competitor of Avenu, where he is likely using and/or disclosing Avenu's confidential information to unfairly compete against Avenu in violation of the Agreement.

46.     All conditions precedent to Avenu's requested relief pursuant to the claims and causes of action asserted herein against McDaniel have occurred and/or been satisfied.

## V.     CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT – NON-COMPETE

47.     Avenu incorporates by reference the foregoing paragraphs as though fully set forth herein.

48.     Based on the Agreement's choice-of-law provision, this cause of action is governed by Missouri law. (*See* Ex. A, § 5).

49.     On or about October 1, 2018, Avenu and McDaniel entered into a valid contract, the Agreement, for the purpose of establishing and describing the parties' rights and obligations with respect to McDaniel's employment with Avenu and post-employment conduct.

50.     The Agreement was supported by valuable consideration (including, but not limited to, employment, continued employment, compensation and benefits, access to Avenu's

confidential information and trade secrets, and access to Avenu's business contacts, as well as specialized training) and mutuality of obligations.

51.    Avenu has complied with and performed all material obligations and conditions precedent under the Agreement, at significant benefit to McDaniel.

52.    Avenu's Agreement with McDaniel specifically prohibits McDaniel, for a period of one (1) year after his employment with Avenu ends, from providing services for the benefit of a Competing Business (as defined in the Agreement) within the Territory (as defined in the Agreement) McDaniel worked in that are the same or similar in function or purpose to those he provided to Avenu during the Look Back Period, *i.e.*, the last two (2) years of his employment with Avenu. (*Id.*, § 3(e)).

53.    As explained above, Avenu has learned that after McDaniel voluntarily resigned his employment with Avenu on or about July 21, 2023, McDaniel became employed by a competitor, Catalis, a Competing Business, and is presently working for Catalis within the same Territory he worked for Avenu. Indeed, upon information and belief, and as discussed in Paragraph 44 above, McDaniel's counsel has tacitly admitted that McDaniel's current employment with Catalis constitutes unlawful competition with Avenu, *i.e.*, by McDaniel performing the same or similar services as those he provided to Avenu during the last two (2) years of his employment, throughout the United States. Further proof supporting this allegation is within the sole possession and control of McDaniel and will be uncovered through the discovery process in this action. Thus, such actions clearly constitute a material violation of Section 3 of the Agreement, wherein McDaniel is prohibited from working for Catalis in this capacity for a period of one (1) year from the date of his resignation from Avenu, subject to any additional tolling days.

54. As a direct and proximate result of McDaniel's material breaches of the Agreement's non-compete covenant, Avenu has been irreparably damaged and will continue to suffer irreparable damage and harm unless McDaniel is enjoined. Accordingly, Avenu seeks the injunctive relief requested herein, actual damages, and other relief, including its attorney's fees and costs as set forth in its Prayer for Relief.

**COUNT II – BREACH OF CONTRACT – NON-SOLICIT OF EMPLOYEES**

55. Avenu incorporates by reference the foregoing paragraphs as though fully set forth herein.

56. Based on the Agreement's choice-of-law provision, this cause of action is governed by Missouri law. (*See* Ex. A, § 5).

57. On or about October 1, 2018, Avenu and McDaniel entered into a valid and enforceable contract, the Agreement, for the purpose of establishing and describing the parties' rights and obligations with respect to McDaniel's employment with Avenu and post-employment conduct.

58. The Agreement was supported by valuable consideration (including, but not limited to, employment, continued employment, compensation and benefits, access to Avenu's confidential information, trade secrets, and access to Avenu's business contacts, as well as specialized training) and mutuality of obligations.

59. Avenu has complied with and performed all material obligations and conditions precedent under the Agreement, at significant benefit to McDaniel.

60. During his employment with Avenu and Conduent, McDaniel worked with, became professionally acquainted with, and/or regularly communicated with two other Avenu employees, King and Jewett. Like McDaniel, King worked in the Justice Solutions Products

business unit.  Through his employment with Avenu, McDaniel engaged in routine communications with King.  King is married to Jewett.

61.    McDaniel resigned his employment with Avenu on or about July 21, 2023, after which time he became employed by Catalis.  On July 28, 2023, merely seven (7) days later, King and Jewett jointly resigned their employment with Avenu, and like McDaniel, became employed with Catalis.  The fact that McDaniel resigned only seven (7) days prior to the date on which King and Jewett resigned, and that all three became employed by Catalis, undeniably creates the assumption (and thus Avenu asserts on information and belief) that such actions clearly constitute a material violation of Section 3 of the Agreement, wherein McDaniel solicited King and Jewett to leave the employment of Avenu for a Competing Business.  Further proof supporting this allegation is within the sole possession and control of the McDaniel and will be uncovered through the discovery process in this action.

62.    Through his solicitation of King and Jewett to leave the employment of Avenu, McDaniel has materially breached the non-solicit covenant of his Agreement.

63.    As a direct and proximate result of McDaniel's material breaches of the Agreement's non-solicit covenant, Avenu has been irreparably damaged and will continue to suffer irreparable damage and harm unless McDaniel is enjoined.  Accordingly, Avenu seeks the injunctive relief requested herein, actual damages, and other relief, including its attorney's fees and costs as set forth in its Prayer for Relief.

## COUNT III – BREACH OF CONTRACT – NON-SOLICIT OF CUSTOMERS

64.    Avenu incorporates by reference the foregoing paragraphs as though fully set forth herein.

65. Based on the Agreement's choice-of-law provision, this cause of action is governed by Missouri law. (*See* Ex. A, § 5).

66. On or about October 1, 2018, Avenu and McDaniel entered into a valid and enforceable contract, the Agreement, for the purpose of establishing and describing the parties' rights and obligations with respect to McDaniel's employment with Avenu and post-employment conduct.

67. The Agreement was supported by valuable consideration (including, but not limited to, employment, continued employment, compensation and benefits, access to Avenu's confidential information, trade secrets, and access to Avenu's business contacts, as well as specialized training) and mutuality of obligations.

68. Avenu has complied with and performed all material obligations and conditions precedent under the Agreement, at significant benefit to McDaniel.

69. Avenu's Agreement with McDaniel specifically prohibits McDaniel, for a period of one (1) year after his employment with Avenu ends, from soliciting or attempting to solicit a Covered Customer or Key Relationship (as defined in the Agreement) for the purpose of doing any business that would compete with Avenu's business. (*Id*., § 3(c)).

70. As explained above, after McDaniel resigned his employment with Avenu on or about July 21, 2023, McDaniel became employed by Catalis, a Competing Business, and is presently working for Catalis within the same Territory he worked for Avenu. At the time of McDaniel's resignation, and immediately prior to King's resignation, an Avenu client (who shall not be identified in this public filing for privacy and confidentiality reasons) notified Avenu that it would be canceling its business relationship with Avenu, in order to begin a relationship with Catalis. Notably, both McDaniel and King had previously worked with this client at Avenu. Based

upon the close temporal proximity of these resignations and the departure of this client, coupled with the fact that McDaniel and King had both worked with this client at Avenu, and upon information and belief, it is self-evident that McDaniel violated his Agreement by unlawfully soliciting this client to terminate its business relationship with Avenu, in order to begin a new relationship with Catalis. Upon information and belief, McDaniel has solicited, has attempted to solicit, and/or will solicit Avenu's other Covered Customers or Key Relationships while employed by Catalis. Further proof supporting this allegation is within the sole possession and control of the McDaniel and will be uncovered through the discovery process in this action.

71.     As a direct and proximate result of McDaniel's material breaches of the Agreement's non-solicit covenant, Avenu has been irreparably damaged and will continue to suffer irreparable damage and harm unless McDaniel is enjoined. Accordingly, Avenu seeks the injunctive relief requested herein, actual damages, and other relief, including its attorney's fees and costs as set forth in its Prayer for Relief.

## COUNT IV – BREACH OF CONTRACT – NON-DISCLOSURE OF CONFIDENTIAL INFORMATION

72.     Avenu incorporates by reference the foregoing paragraphs as though fully set forth herein.

73.     Based on the Agreement's choice-of-law provision, this cause of action is governed by Missouri law. (*See* Ex. A, § 5).

74.     On or about October 1, 2018, Avenu and McDaniel entered into a valid and enforceable contract, the Agreement, for the purpose of establishing and describing the parties' rights and obligations with respect to McDaniel's employment with Avenu and post-employment conduct.

75.    The Agreement was supported by valuable consideration (including, but not limited to, employment, continued employment, compensation and benefits, access to Avenu's confidential information, trade secrets, and access to Avenu's business contacts, as well as specialized training) and mutuality of obligations.

76.    Avenu has complied with and performed all material obligations and conditions precedent under the Agreement, at significant benefit to McDaniel.

77.    Avenu's Agreement with McDaniel specifically prohibits McDaniel, for a period of one (1) year after his employment with Avenu ends, from taking on responsibilities for a Competing Business (as defined in the Agreement) that would involve the probable use or disclosure of Confidential Information (as defined in the Agreement) or the conversion of Covered Customers or Key Relationships (as defined in the Agreement) to the benefit of a Competing Business (as defined in the Agreement) or detriment of Avenu.  (*Id.*, § 3(f)).

78.    Avenu's Agreement with McDaniel further prohibits him from engaging in any unauthorized use or disclosure of Confidential Information during his employment and for so long thereafter as such information qualifies as Confidential Information.  (*Id*., § 2).

79.    In his role as a Product Manager and Business Analyst for Avenu, McDaniel was privy to and gathered a significant amount of Confidential Information about Avenu's employees, customers, business, and the products and services offered through the Justice Solutions Products business unit.  This type of Confidential Information would enable a competitor, such as Catalis, to use the information to identify, capture, and usurp Avenu's employees, customers and business opportunities, resulting in lost profits and irreparable damage.  Through his employment with Catalis and through his use of Avenu's confidential information in business dealings conducted on behalf of Catalis, McDaniel has materially breached the non-disclosure provisions of his

20

Agreement. Accordingly, Avenu's confidential information has been disclosed or utilized and/or will be inevitably disclosed as a consequence of McDaniel's breach of the Agreement.

80.     As explained above, after McDaniel resigned his employment with Avenu on or about July 21, 2023, McDaniel became employed by Catalis. On the bases set forth above, Avenu avers McDaniel is engaged in the provision of services to Catalis that are the same or similar in function or purpose to those he provided to Avenu. Based on McDaniel's employment by a direct competitor, in the same competitive field of software Justice Solutions Products, McDaniel has and/or will inevitably, to perform his job for Catalis, utilize Confidential Information he gained from Avenu, in violation of his Agreement. Therefore, McDaniel's employment with Catalis involves the use or disclosure and/or inevitable use or disclosure of Avenu's Confidential Information, and McDaniel will, if he has not already, disclose or use Confidential Information he acquired while employed by Avenu for the benefit of Catalis. Further proof supporting this allegation is within the sole possession and control of McDaniel and will be uncovered through the discovery process in this action.

81.     McDaniel is prohibited from taking on responsibilities for a Competing Business that would involve the probable use or disclosure of Avenu's Confidential Information for a period of one (1) year from the date of his resignation, subject to any tolling days. McDaniel is further prohibited from any unauthorized use or disclosure of Confidential Information for such period as the information at issue qualifies as Confidential Information under the Agreement.

82.     As a direct and proximate result of McDaniel's material breaches of the Agreement's non-disclosure covenant, Avenu has been irreparably damaged and will continue to suffer irreparable damage and harm unless McDaniel is enjoined. Accordingly, Avenu seeks the

injunctive relief requested herein, actual damages, and other relief, including its attorney's fees and costs as set forth in its Prayer for Relief.

<u>**COUNT V – INJUNCTIVE RELIEF**</u>

83.     Avenu incorporates by reference the foregoing paragraphs as though fully set forth herein.

84.     The continued employment of McDaniel at Catalis under circumstances where McDaniel is (1) actively and illegally providing services that directly compete with Avenu's Business, (2) soliciting Avenu's employees to leave the employment of Avenu, (3) soliciting Avenu's customers to cease doing business with Avenu and/or engage in business with a competitor, and (4) using or disclosing Avenu's Confidential Information, are activities that, considered individually or together, subject Avenu to irreparable harm. McDaniel's breach of the Agreement has had, or will have, an immediate and adverse effect on Avenu's business and goodwill associated with its operations. Moreover, determination of money damages to compensate Avenu for such breaches would be difficult, if not impossible, to quantify.

85.     McDaniel's unlawful competition with Avenu has caused Avenu irreparable loss, an indeterminable amount of revenue and profit, as well as the loss of important and valuable customer relationships, goodwill, and loyalty that carry with them economic value that is not and cannot be reflected in such revenue and profit.

86.     McDaniel's solicitation of Avenu's employees has likewise caused Avenu irreparable loss, and an indeterminate amount of revenue and profit, as the loss of Avenu's employees necessarily entails the loss of years of accumulated knowledge and expertise that Avenu's employees gained from training and experience provided by Avenu and that these employees now use to advance Catalis' court and jury related software products and services.  The

accumulated knowledge and expertise of Avenu's employees, as well as the relationships and the goodwill Avenu's employees generate with the Company's customers, carries economic value that is not and cannot be reflected in revenue and profit.

87.    McDaniel's acts of soliciting Avenu's customers to transfer some or all of their business to Catalis may cause Avenu to lose an indeterminable amount of revenue and profit as well as the loss of important and valuable customer relationships, goodwill, and loyalty that carry with them economic value that is not and cannot be reflected in such revenue and profit.

88.    The actual or inevitable disclosure of Avenu's confidential information would have an immediate and devasting effect on Avenu's business and future profitability. Avenu's confidential information inevitably will be disclosed as a consequence of McDaniel's breaches of the Agreement.

89.    Monetary relief would be wholly inadequate to make Avenu whole for McDaniel's unfair competition. Additionally, determination of the appropriate amount of such money damages would be difficult to quantify.

90.    Avenu has no adequate remedy at law to protect it from McDaniel's breaches of the Agreement or the inevitable disclosure of Avenu's confidential information.

91.    The public interest favors an injunction prohibiting a breach of the Agreement, and tortious interference thereof, because public policy favors the protection of confidential information, and the observance of contractual duties over breaching agreements.

92.    Issuance of the requested injunctive relief would have little, if any, adverse effect upon McDaniel.  McDaniel merely would be precluded from unfairly competing with Avenu, using or disclosing Avenu's confidential information, and unlawfully soliciting Avenu's

employees and customers. Such restrictions are not unduly burdensome and simply require McDaniel to adhere to the terms of the Agreement and comply with applicable laws.

93.    Issuance of the requested injunctive relief is necessary to ensure compliance with the parties' statutory, common law, and contractual duties.  Indeed, McDaniel has already demonstrated a propensity for violating the Agreement.

94.    This Court has the power to enjoin the unlawful activities of McDaniel and avoid the irreparable harm being caused to Avenu by McDaniel.

95.    Accordingly, Avenu seeks the injunctive relief requested in its Prayer for Relief.

## VI.    ALTERNATE REFORMATION AND TOLLING

96.    In the event that the Court should find any part of the restrictions contained in the Agreement to be too broad to be enforced, or otherwise unenforceable, Avenu and McDaniel agreed that the Court should modify and enforce the restrictive covenants to the fullest extent allowed by law. (Ex. A, § 4). Accordingly, Avenu requests that said restriction(s), to the extent they are overly broad or otherwise unenforceable, be reformed by the Court so as to make the restriction(s) enforceable to the maximum extent allowed by law.

97.    Additionally, because McDaniel has failed to comply with the restrictions in the Agreement, Avenu asks the Court to toll the time restriction by one day for each day McDaniel is found to be in violation of the restriction, up to a maximum of twelve (12) months. (Ex. A, § 8).

## VII.    PRAYER FOR RELIEF

WHEREFORE, Avenu prays for the following:

(A)    Preliminary and permanent injunctions, enjoining McDaniel for a period of one (1) year from McDaniel's last day of employment with Avenu, which period shall be extended by one (1) day for each day McDaniel is found to have violated the restriction at issue up to a maximum of 12 months, from providing services for the benefit of a Competing Business (as defined in the

Agreement), including Catalis, within his Territory (as defined in the Agreement), that are the same or similar in function or purpose to those he provided to Avenu during the Look Back Period (as defined in the Agreement);

(B)     Preliminary and permanent injunctions, enjoining McDaniel for a period of one (1) year from McDaniel's last day of employment with Avenu, which period shall be extended by one (1) day for each day McDaniel is found to have violated the restriction at issue up to a maximum of 12 months, from soliciting or attempting to solicit a Covered Employee (as defined in the Agreement) to leave Avenu's employment;

(C)     Preliminary and permanent injunctions, enjoining McDaniel for a period of one (1) year from McDaniel's last day of employment with Avenu, which period shall be extended by one (1) day for each day McDaniel is found to have violated the restriction at issue up to a maximum 12 months, from soliciting or attempting to solicit a Covered Customer or Key Relationship (as defined in the Agreement) for the purpose of doing any business that would compete with the Company's Business (as defined in the Agreement);

(D)     Preliminary and permanent injunctions, enjoining McDaniel from engaging in any unauthorized use or disclosure of Confidential Information (as defined in the Agreement) for so long as the Confidential Information qualifies as such;

(E)     Preliminary and permanent injunctions, enjoining McDaniel from further breaching his Agreement;

(F)     Judgment against McDaniel for breach of contract as to the Agreement's non-compete covenant, and awarding Avenu damages in an amount to be proven at trial;

(G)     Judgment against McDaniel for breach of contract as to the Agreement's employee and customer non-solicit covenants, and awarding Avenu damages in an amount to be proven at trial;

(H)     Judgment against McDaniel for breach of contract as to the Agreement's non-disclosure provisions, and awarding Avenu damages in an amount to be proven at trial;

(I)     The costs of this action, including pre-judgment interest and attorneys' fees; and

(J)     Such other and further relief as the Court may deem just.

## JURY DEMAND

Avenu demands a jury trial as to all claims and issues so triable.

*/s/ Jennifer A. Buck*
Jennifer A. Buck, MO # 71159
LITTLER MENDELSON, P.C.
1201 Walnut Street
Suite 1450
Kansas City, MO 64106
Direct: 816.627.4446
Fax: 816.627.4444
jbuck@littler.com

Michael P. Royal (*pro hac vice forthcoming*)
Texas State Bar No. 00784886
LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX 75201-2931
Direct: 214.880.8160
Fax: 214.593.4141
mroyal@littler.com

James McGehee (*pro hac vice forthcoming*)
Texas State Bar No. 24132520
LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX 75201-2931
Direct: 214.880.8160
Fax: 214.593.4141
jmcgehee@littler.com

**ATTORNEYS FOR PLAINTIFF**
**AVENU INSIGHTS & ANALYTICS, LLC**